HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAUREEN MCCLAIN, an individual,

Plaintiff,

v.

CITY OF TACOMA, a municipal corporation in Washington State,

Defendant.

Case No. C06-5016  RBL

ORDER

Pending before the Court are Defendant's Motions for Summary Judgment, Dkt. Nos. 18, 19, and 20. The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

**I. BACKGROUND**

This lawsuit arises from the aftermath of the Tacoma Police Department's 1998 investigation into Plaintiff's allegations of domestic violence against her then-husband, Greg Meyers, a Tacoma Police Officer.

On October 15, 1998, after having conducted a *Loudermill* hearing,[1] the Tacoma Police Department sent to Greg Meyers a "Disciplinary Action/Notice of Intent to Terminate" memo. In that memo, the Department summarized its investigation of Mr. Meyers as follows:

This case came to the attention of Internal Affairs on May 3, 1998. Your wife[, the

---

[1] *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542-543 (1985) (outlining due process protections afforded to individuals with a protected property interest in their employment).

ORDER
Page - 1

plaintiff,] made a report to PCSD that you had assaulted her in your residence. She subsequently was examined at a local hospital and her injuries were documented. She then applied for a protective order and in the affidavit, she mentioned two additional incidents of domestic violence assault. One of those two additional incidents included medical documentation of an injury to her person and formed the basis of a criminal charge of domestic violence assault which was filed against you in [state] District Court. Internal Affairs investigated all three incidents of alleged assault. It was determined that in one of the three incidents, you may have been acting in self-defense. However, Internal Affairs concluded that there was sufficient evidence to sustain that you had assaulted your wife in the other two incidents.

After outlining a number of other violations that Mr. Meyer had committed, the memo informed him that his employment would be terminated, effective October 19, 1998. He tendered his resignation immediately after receiving the memo, requesting that he be allowed to resign in good standing. The City processed a Personnel Action Form the next day, making his termination effective October 16, 1998. On the Personnel Action Form, the reason for the termination is stated as "Resign - Not in good standing."

Three days before the department sent the October 15 memo, the Chief of Police had sent to Plaintiff a brief letter, stating, "Your complaint of being assaulted by Greg Meyer has been investigated. The internal investigation concluded that *there is sufficient evidence to sustain the allegations*. An appropriate disciplinary disposition will be reached in the near future" (emphasis added).

Based on this letter, Plaintiff was apparently under two mis-impressions. First, she had the impression that all three of her allegations of domestic violence had been substantiated by the Internal Affairs investigation whereas the investigation had found sufficient evidence to sustain only two of her three allegations of domestic violence. Second, she had the impression that Mr. Meyer would be terminated as a result of the investigation whereas as it turned out, Mr. Meyer was terminated because he resigned—"not in good standing."

Five years later, in 2003, Plaintiff discovered that her understanding had not been precisely correct. She apparently made this discovery after a local newspaper published a story about a lawsuit Mr. Meyer had filed to keep his Internal Affairs file from being disclosed. In the article, Mr. Meyer boasted that one of the three domestic violence allegations against him had been determined to be self-defense. Plaintiff then contacted the Department and discovered that Mr. Meyer had been forced to resign as a result of the investigation, rather than being terminated as a result of the investigation. Plaintiff contacted the Department and was apparently assured not only that being forced to resign was essentially the same as being terminated, but also that Mr. Meyer would not be able to become a police officer again with such a

stain on his record.[2] Still, Plaintiff was apparently quite upset and believed that the City and the Police Department had not taken her seriously. Adding to Plaintiff's emotional distress, Mr. Meyer has apparently gone to court on a number of occasions to have the domestic violence disability expunged from his record so that he can again legally carry a firearm.

In December 2005, seven years after Mr. Meyer resigned, Plaintiff filed the present action, claiming that her constitutional rights were violated by the City's handling of her 1998 complaints of domestic violence. Specifically, she alleges that her right to equal protection under the law was violated because the City gives preferential treatment to police officers accused of domestic violence, compared to the way the City treats its other employees accused of the same. Thus, she alleges that spouses of police officers are denied the protections that are afforded to others, apparently stating a claim arising under 42 U.S.C. § 1983. She further alleges that multiple City actors conspired towards the common goal of misleading her about her ex-husband's termination, apparently stating a claim arising under 42 U.S.C. § 1985. She also alleges various causes of action in tort arising from the same conduct.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e).

---

[2] In her complaint, Plaintiff makes much of the fact that in 2005, Mr. Meyer was apparently seeking employment as a law enforcement officer. This issue is at best only peripherally related to the present lawsuit. There is no evidence in the record to suggest that Mr. Meyer is more likely to be able to re-enter law enforcement because he was not terminated outright, but was forced to resign. Furthermore, regardless of whether Mr. Meyer is in fact ill-suited to be a law enforcement officer, neither the City nor this Court has any power or duty to prevent him from seeking whatever form of employment he wishes to seek.

ORDER
Page - 3

Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts *specifically attested by that party* contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). On the contrary, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322 (quoting Fed.R.Civ.P. 56(e)). Moreover, when "the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (holding that the requisite "showing" can be made by "pointing out through argument--the absence of evidence to support plaintiff's claim").

## II. DISCUSSION

*A. Statute of Limitations: Civil Rights Claims*

Because 42 U.S.C. §§ 1983 and 1985 do not contain their own statutes of limitations, this Court must apply the statute of limitations for an analogous cause of action under Washington state law. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.Ed.2d 440 (1980). The appropriate statute of limitations in a § 1983 or § 1985 action is the three-year limitation of Wash.Rev.Code § 4.16.080(2). *See Bagley v. CMC Real Estate Corp.,* 923 F.2d 758, 760 (9th Cir. 1991).

Federal law, however, governs when a claim accrues. See *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). A claim accrues when the plaintiff knows, or should reasonably know, of the injury which is the basis of the cause of action. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Additionally, a plaintiff must be diligent in discovering the critical facts. *Bibeau v. Pacific Northwest Research Foundation Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999).

Plaintiff has premised her claims on the City's handling of her complaints to Internal Affairs in 1998 and the outcome of that investigation. She did not bring her case until late 2005, four years past the three year statutory period. Therefore, if in 1998 Plaintiff knew or should have known in the exercise of due diligence that she had suffered an injury, then her claims are barred by the statute of limitations. However, "what [a plaintiff] knew and when [she] knew it are questions of fact." *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir.1986).

The "should reasonably know" standard "looks not to the likelihood that a plaintiff would in fact have discovered the cause of his injury if he had only inquired, but instead focuses on whether the plaintiff could reasonably have been expected to make the inquiry in the first place." *Rosales v. U.S.*, 824 F.2d 799, 803 -804 (9th Cir. 1987) (quoting *In re Swine Flu Prods. Liab. Litig.*, 764 F.2d 637, 639-40 (9th Cir.1985)). On the facts in the record, there is a material question as to whether Plaintiff could reasonably have been expected to inquire further after being told by the Chief of Police that her allegations had been sustained. Therefore, the City's motion for summary judgment as to Plaintiff's federal civil rights claims must be DENIED.

*B. Statute of Limitations: State Claims*

When deciding Plaintiff's state claims, this Court must apply Washington law. *See Shannon-Vail Five Inc. v. Bunch,* 270 F.3d 1207, 1210 (9th Cir. 2001). In Washington,

> [i]n many instances an action accrues immediately when the wrongful act occurs, but in some circumstances where the plaintiff is unaware of harm sustained a "literal application of the statute of limitations" could "result in grave injustice." To avoid this injustice, courts have applied a discovery rule of accrual, under which the cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action. This does not mean that the action accrues when the plaintiff learns that he or she has a legal cause of action; rather, the action accrues when the plaintiff discovers the salient facts underlying the elements of the cause of action.

*1000 Virginia Ltd. Partnership v. Vertecs Corp.*, 158 Wash.2d 566, 575-576 (2006) (internal citations omitted).

ORDER
Page - 5

1  Under Washington law, when a defendant moves for summary judgment on the basis of an
2  affirmative defense such as the appropriate statute of limitations, the defendant bears the initial burden of
3  proving the absence of an issue of material fact as to that defense. *Haslund v. City of Seattle*, 86 Wash.2d
4  607, 621, 547 P.2d 1221 (1976). Where, however, a plaintiff invokes the discovery rule to counter the
5  statute of limitations defense, the burden is also on that plaintiff to show that facts constituting the cause of
6  action were not discovered or *could not have been discovered* by due diligence within the limitations
7  period. *G.W. Constr. Corp. v. Prof'l Serv., Indus., Inc.*, 70 Wash. App. 360, 367 (1993) (emphasis added);
8  *accord Giraud v. Quincy Farm and Chem.*, 102 Wash. App. 443, 449-50, 6 P.3d 104 (2000) ("To invoke
9  the discovery rule, the plaintiff must show that he or she could not have discovered the relevant facts
10 earlier."). However, unless the facts are susceptible of only one reasonable interpretation, it is up to the
11 jury to determine whether Plaintiff has met this burden. *See Goodman v. Goodman*, 128 Wash.2d 366,
12 373, 907 P.2d 290 (1995).

13 It is not disputed that Plaintiff did not file her lawsuit until seven years after the incidents that
14 allegedly gave rise to her state claims. Plaintiff further concedes that she *could have* discovered in 1998
15 that the City had not completely and specifically disclosed the precise outcome of its investigation, but she
16 alleges that she had no reason to question the City's representations to her about that outcome. Because
17 the facts are susceptible of more than one reasonable interpretation, it is up to the jury to determine
18 whether Plaintiff has shown that she could not have discovered the relevant facts earlier. Accordingly, the
19 City's motion for summary judgment as to Plaintiff's state claims must be DENIED.

20                                    *C. Civil Liberties Claims*

21 Plaintiff's complaint generally alleges that "Defendant's agents... individually and as a group...
22 intentionally and in conspiracy together violated Plaintiff's civil liberties under the color of state law.
23 Defendant's actions violated Plaintiff's right of association, freedom of speech, equal protection under the
24 laws, and due process of law." Dkt. #21-3 p. 3. This allegation has been treated by the parties as a claim
25 arising under 42 U.S.C. § 1983.

26 If the "execution of a government's policy or custom, whether made by its lawmakers or by those
27 whose edicts or acts may fairly be said to represent official policy, inflicts the injury [then] the government
28 as an entity is responsible under § 1983." *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct.

2018, 56 L.Ed.2d 611 (1978). To establish municipal liability for failing to act to preserve constitutional rights, Plaintiff must satisfy four conditions: (1) that Plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996).

Plaintiff does not specifically address each of these conditions, instead she generally asserts that "the facts" she has put forward set forth exactly how the City violated numerous of her constitutional rights, including her right of association, freedom of speech, equal protection, and due process. She comes closest to asserting that she was deprived of a specific constitutional right when she asserts that she was not afforded equal protection of the laws because the City desired to give police officers accused of domestic violence more lenient treatment than it gives to other City employees. And it may be inferred from the record that Plaintiff believes that her "due process" rights were violated when the City did not inform her with sufficient specificity of the outcome of its investigation. But it is unclear from the Court's review of the record, and Plaintiff does not designate any evidence that would indicate how the City deprived her of her right of association or her freedom of speech. Thus she cannot establish that she was deprived of her right of association or her freedom of speech, and her claims based on violations of those rights must fail.

As for claims based on the remaining rights, to meet the second condition for establishing municipal liability, Plaintiff must show that there is a triable issue of fact concerning whether each constitutional deprivation was the result of some ordinance, regulation, official policy statement, or at least a common, widespread practice that is attributable to the City. *See Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 416-18, 117 S.Ct. 1382, 1395 (1997). Even assuming for the sake of argument that the City somehow deprived Plaintiff of her constitutional rights to equal protection and due process, Plaintiff has designated no evidence in the record that would suggest that the City had a pertinent policy, that the City's policy amounted to deliberate indifference to those rights, or that the policy was the moving force behind the deprivation. Moreover, Plaintiff has apparently conducted no discovery to attempt to establish any of these conditions.

Because Plaintiff has failed to present any evidence or identify any fact that would support her bare

assertions that the City deliberately adopted a course of action that was indifferent to the constitutional rights that she claims were violated, Plaintiff's § 1983 claims must be DISMISSED.

*D. Civil Conspiracy Claims*

Plaintiff's claim is silent as to the statutory basis for her conspiracy claim, but the City assumed, without objection, that Plaintiff is attempting to proceed under 42 U.S.C. § 1985(3). To establish a claim under § 1985(3), Plaintiff must show (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The Supreme Court has made it clear that 42 U.S.C. § 1985(3) is not to be construed as a general federal tort law. *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1518 -1519 (9th Cir. 1987). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise *class-based*, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102 (emphasis added). Thus, only members of a protected class can state a claim under § 1985(3). *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th Cir. 1991) (citing *Griffin*, 403 U.S. at 103)

Plaintiff, however, has failed to present any evidence or identify any fact that would support her bare assertions that the City makes a classification based on a person's status as a spouse of a police officer, that the City's agents conspired, and that any such conspiracy was to deprive such spouses of equal protection of the laws. Moreover, it is not even clear what right or privilege she was deprived of as a result of the alleged conspiracy. Plaintiff cannot credibly assert that the Constitution puts the City under a duty to determine that all of Plaintiff's allegations were sustained by the evidence, a duty to disclose to Plaintiff in precise detail the results of its internal investigations, or a duty to fire Mr. Meyer on the spot (notwithstanding the fact that Mr. Meyer had his own right to due process prior to his termination. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542-543 (1985) (outlining due process protections afforded to individuals with a protected property interest in their employment)).

Plaintiff complained about her husband to the Department; the Department investigated; her husband was forced to resign. Had the City explicitly disclosed to Plaintiff that only two of her three

allegations of domestic violence had been sustained by the evidence, Plaintiff would still have gotten the outcome she desired—Mr. Meyer would still have lost his job, and there is no evidence to suggest that Mr. Meyer is any better situated because he was forced to resign rather than being terminated outright.

Because Plaintiff has failed to present any evidence or identify any fact that would support her bare assertions that the City's agents conspired to deprive her or spouses of police officers of equal protection of the laws, Plaintiff's § 1985 claims must be DISMISSED.

*E. Outrage Claims*

Plaintiff's complaint generally alleges that the City's conduct was outrageous. Under Washington law, the basic elements of the tort of outrage are: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Rice v. Janovich*, 109 Wn.2d 48, 61 (1987); Restatement (Second) of Torts § 46 (1965). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975). As the Restatement (Second) of Torts § 46, comment (d) puts it, liability has been found for cases "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Birklid v. Boeing Co.*, 127 Wash. 2d 853, 867 (1995).

Plaintiff alleges that the City outrageously mislead her about the outcome of its investigation into her accusations that Greg Meyer, who was then her husband and a City police officer, had committed three acts of domestic violence against her. The City told Plaintiff that "there was sufficient evidence to sustain the allegations," Dkt. #21-3 p. 24, although more specifically, the City's investigation concluded that there was sufficient evidence to sustain that Mr. Meyer had assaulted Plaintiff in two of the three incidents, Dkt. #21-3 p. 27. She further alleges that the City outrageously mislead her into believing that Mr. Meyer would be terminated as a result, when in fact he resigned, not in good standing. Plaintiff asserts but presents no evidence to show that the City was motivated by a desire to treat police officers more leniently than other City employees accused of domestic violence.

To begin with, it is specious for Plaintiff to allege that the City outrageously "allowed" Mr. Meyer to resign before he could be terminated. Under the City's civil service rules and the requirements of federal due process, the City was obligated to give Mr. Meyer the opportunity to respond to the allegations against him at a pre-termination hearing. *See, e.g., Loudermill,* 470 U.S. at 542-543; Tacoma Muni. Code 1.24.955 (establishing predisciplinary procedures to be used with classified employees). After a *Loudermill* hearing, Mr. Meyer was informed on October 15, 1998 that his employment would be terminated, effective October 19, 1998. He tendered his resignation October 15, and the City processed it the next day, making his resignation—"not in good standing"—effective October 16, 1998. Plaintiff has presented no evidence to suggest that the City did anything outrageous. Indeed, Plaintiff has presented no evidence and made no argument to suggest that the City did anything but comply with the dictates of the U.S. Constitution and its own civil service rules.

Reasonable minds must also agree that it was within some possible bounds of decency for the City to disclose to Plaintiff only the broad results of its investigation, omitting a detail that was of no material significance. Plaintiff herself concedes that the letter outlining the results of the City's investigation was factually accurate: the letter stated that the City had determined that Mr. Meyer had acted improperly and that as a result, he would suffer disciplinary consequences. Nonetheless, Plaintiff complains that "what [the City] wanted me to believe wasn't correct." Dkt. 21 p. 8. But even assuming that the City did in fact want Plaintiff to believe that all three of her allegations had been substantiated, Washington case law does not support a conclusion that such conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Grimsby*, 85 Wash. 2d at 59. Plaintiff has cited nothing to suggest otherwise.

Accordingly, Plaintiff's outrage claims must be DISMISSED.

### *F. Defamation Claims*

To state a *prima facie* case of defamation, Plaintiff must show by convincing clarity four essential elements: (1) a [provably] false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) harm caused by the publication. *Mark v. Seattle Times,* 96 Wash. 2d 473, 486-87 (1981) (citing Restatement (Second) of Torts § 558 (1977)).  To avoid summary judgment, Plaintiff would have to allege

as to each element facts that would raise a genuine issue of fact for the jury. *Id.*

Plaintiff alleges that she was defamed based on three statements. First, she alleges that she was defamed when an Internal Affairs investigator noted in the investigation file that Plaintiff was "unstable." Dkt. No. 21-2, p. 7. Second, she alleges that she was defamed when an officer or a secretary "put a note in the file about my sanity and my sense of reason or whatever." Dkt. No. 21-2, p. 8. Third, she alleged that she was defamed when her ex-husband stated in the course of his lawsuit against the City that she had committed perjury. Dkt. No. 21-2, p. 8. Her ex-husband made these allegedly defamatory remarks after his termination, when he was no longer a City employee. *Id.*

Defendants argue that Plaintiff has not established a *prima facie* case of defamation arising from any of these alleged statements. Plaintiff does not challenge defendant's arguments.

As to the first two alleged statements, Plaintiff's complaint alleges that the City made defamatory statements to "third parties and to third party agencies," Dkt. 21-3 p. 5, but Plaintiff has designated no evidence in the record to show that there was an unprivileged publication to a third party. Moreover, Plaintiff has designated no evidence in the record to show that any unprivileged communication that may have been made caused harm to her reputation so as to "lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." *See* Restatement (Second) of Torts § 559. Thus, Plaintiff has failed to establish a *prima facie* case of defamation as to the first two alleged statements.

The third alleged statement suffers from the same defects that plague the first two alleged statements. In addition, Plaintiff has advanced no theory under which she may hold the City liable for statements allegedly made by a former employee, outside the context of his employment with the City.

Accordingly, Plaintiff's defamation claims must be DISMISSED.

*G. Negligent Supervision Claims*

Plaintiff claims that the City failed to supervise its employees to ensure that they did not commit negligent or intentional acts of wrongdoing. The theory of negligent supervision creates a limited duty to control an employee for the protection of third parties, even where the employee is acting outside the scope of employment. *Peck v. Siau*, 65 Wash. App. 285, 294 (1992).

> A master is under a duty to exercise reasonable care so [as] to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

ORDER
Page - 11

>         (a) the servant
>             (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>             (ii) is using a chattel of the master, and
>         (b) the master
>             (i) knows or has reason to know that he has the ability to control his servant, and
>             (ii) *knows or should know of the necessity and opportunity for exercising such control.*

*Id.* (quoting Restatement (Second) of Torts § 317 (1965) (emphasis added)); *Niece v. Elmview Group Home,* 131 Wash. 2d 39, 51-52 (1997).

Plaintiff bases her negligent supervision claim on her allegation that multiple City actors mislead her about the circumstances surrounding the end of her ex-husband's employment with the City. However, even assuming for the sake of argument that the conduct of the City actors caused her harm, Plaintiff has presented no evidence to show that the City knew or should have known of the necessity for exercising control over its servants.

Plaintiff argues instead that this element of the negligent supervision tort is absurd and that the "knowledge" element only applies when the servant has a propensity for violent behavior. However, these arguments are not supported by and cannot be reconciled with the pertinent case law. To establish that a duty exists in a negligent supervision claim, a plaintiff must show that the master knew or should have known of the necessity and opportunity for exercising control of its servant. *Peck*, 65 Wash. App. at 294; *Elmview,* 131 Wash. 2d at 51-52.

Plaintiff has not shown that the City was under a duty to exercise reasonable care to prevent its servants from misleading her about the circumstances surrounding the end of her ex-husband's employment with the City. Because Plaintiff has failed to establish a *prima facie* case of negligent supervision, her negligent supervision claims must be DISMISSED.

*H. Negligent Infliction of Emotional Distress Claims*

Plaintiff claims that the City negligently inflicted emotional distress upon her. To prevail on these claims, Plaintiff must establish the elements of duty, breach, proximate cause, and damages. *Estate of Lee ex rel. Lee v. City of Spokane*, 101 Wash. App. 158, 176 (1992) (citing *Hunsley v. Giard*, 87 Wash. 2d 424, 434 (1976)). Plaintiff must also establish that her emotional distress is manifested by objective symptoms that are "susceptible to medical diagnosis and proved through medical evidence." *Kloepfel v. Bokor*, 149 Wash. 2d 192, 198 (2003) (quoting *Hegel v. McMahon*, 136 Wash. 2d 122, 135 (1998)).

The City's briefing presented no arguments concerning negligent infliction of emotional distress. However, at oral argument, the City asserted that Plaintiff has not met her burden regarding these claims. The Court agrees. Aside from the bare allegations of her complaint, Plaintiff has presented no cognizable evidence by which a reasonable trier of fact could find the City liable for the tort of negligent infliction of emotional distress. Specifically, Plaintiff has failed to present evidence that would establish a duty owed to her by the City, and the record is devoid of any evidence that Plaintiff has suffered the kinds of objective symptoms required by pertinent case law. As a result, Plaintiff's negligent infliction of emotional distress claims must be DISMISSED.

### III. CONCLUSION

For the reasons discussed above, the City's Motion for Summary Judgment Re: Statute of Limitations, Dkt. #18, is DENIED. The City's Motion for Summary Judgment Re: Plaintiff's Federal Claims, Dkt. #19, is GRANTED, and Plaintiff's § 1983 and § 1985 claims are DISMISSED. The City's Motion for Summary Judgment Re: Plaintiff's State Claims, Dkt. #20 is GRANTED, and Plaintiff's outrage, defamation claims, negligent supervision claims, and negligent infliction of emotional distress claims are DISMISSED.

It is so ORDERED.

DATED this 30th day of August, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE